IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

FERMENT BREWING COMPANY, LLC,  )
an Oregon Limited Liability Company,  )
                                      )
            Plaintiff,                )   TC-MD 220020N
                                      )
      v.                              )
                                      )
HOOD RIVER COUNTY ASSESSOR,           )
                                      )
            Defendant                 )
                                      )
      and                             )
                                      )
DEPARTMENT OF REVENUE,                )
State of Oregon,                      )
                                      )   **ORDER DENYING MOTION TO**
            Defendant-Intervenor.     )   **DISMISS**

This matter came before the court on Defendant's Motion to Dismiss (Motion), filed

February 23, 2022. The parties filed written briefings and participated in an oral argument held

by remote means on May 12, 2022. During that oral argument, the court requested that the

parties file additional documents pertaining to whether Plaintiff is aggrieved under ORS 305.275.

A second oral argument was held by remote means on June 15, 2022.

A.    *Statement of Facts, Background*

Plaintiff is a brewing company that leased two floors of a property located at 403

Portway Ave in Hood River beginning April 1, 2017.[1] (Decl of Roediger, Ex 1 at 1-2.) The

building is one of two owned by Key Development & Asset Management, Inc. (Key

Development) at that location. (*See id.*) The leased space totaled 9,582 square feet, comprised

---

[1] Various applications submitted by Plaintiff list the address as 407 Portway Ave. (*See, e.g.,* Def's Mot, Ex 1; Decl of Mangan, Ex C at 1, Ex D at 1.) The reason for the discrepancy is unclear.

of the entire ground floor and the second floor of the building. (*Id.*) Plaintiff's leased space represents 62 percent of the rentable square feet within the building. (*Id.*) The lease lists Plaintiff's use as "a brewhouse, fermentation area, cooler and storage on the ground floor, and * * * retail, office, restaurant and bar space on the second floor * * *." (*Id.*)

Pursuant to its lease with Key Development, Plaintiff is responsible for its share of real property taxes,[2] which are included within common area maintenance fees and costs (CAMs). (Decl of Roediger, Ex 1 at 5, 17.) Key Development must provide Plaintiff with an accounting of CAMs (including real property taxes) each April and Plaintiff must pay the amount within 30 days. (*Id.* at 7-8.) "Each accounting provided by [Key Development] * * * will be conclusive and binding upon [Plaintiff] unless" Plaintiff notifies Key Development of a dispute within 60 days. (*Id.* at 8.) In November 2021, Key Development "informally notified" Plaintiff that its second-floor rental space was not exempt from taxation and "subsequently notified [Plaintiff] that [it] owes the proportional share of any property taxes attributable to its second floor premises." (Decl of Roediger at 2.) Plaintiff offered no evidence that it had received from Key Development an accounting or bill for real property taxes for any of the tax years at issue.

1.     *Plaintiff's exemption filings*

On April 20, 2016, Plaintiff filed an Oregon Enterprise Zone (EZ) Authorization Application. (Def's Mot at 2, Ex 1.) It indicates that Plaintiff will engage in the eligible activities of "manufacturing" and "processing." (Def's Mot, Ex 1 at 1.) The application also states that Plaintiff will engage in "ineligible activities," specifically that "retail sales shall occur on a separate floor from manufacturing and processing." (*Id.*) It lists an "expected estimated value" of property totaling $2,950,000, with $1,950,000 allocated to real property (new

---

[2] Plaintiff is responsible for paying any taxes due on its personal property. (Decl of Roediger, Ex 1 at 17.)

construction) and $1,000,000 to personal property. (*Id.* at 2.) Plaintiff describes the intended use of the qualified property as: "industrial brewing space will be used as a brewhouse, fermentation area, cooler, and storage." (*Id.*) An EZ Authorization Approval form was signed by Defendant on March 27, 2017. (*Id.* at 2, Ex 2.) It lists the same estimated property value of $2,950,000. (*Id.*)

Plaintiff submitted EZ Authorization Applications again in 2017[3] and 2018,[4] each indicating that Plaintiff will engage in the eligible activities of manufacturing and processing. (Decl of Mangan at 2, Exs C, D.) The 2017 application lists the ineligible activities of "retail sales," which "shall occur on a separate floor from manufacturing and processing." (*Id.* at Ex D.) The 2018 application indicates that Plaintiff does or will engage in ineligible activities but does not specify what they are. (*Id.* at Ex C.) The 2017 application lists an "expected estimated value" of $1,950,000 for newly constructed buildings or structures, and of $200,000 for personal property, for a total of $2,150,000.[5] (*Id.* at Ex D.) The 2018 application lists a "total estimated value" of $1,800,000 for real property, composed of $1,500,000 for new buildings or structures; $150,000 for new additions to existing buildings or structures; and $150,000 for heavy or affixed machinery and equipment. (*Id.* at Ex C.)

/ / /

/ / /

---

[3] The 2017 application was not signed or dated but Mangan identified as a document submitted to Defendant. (Decl of Mangan at 2, Ex D at 2.)

[4] The 2018 application lists a different address and is for "Abide LLC dba Camp 1805" and adds a new eligible activity: distillation of spirits. (Decl of Mangan, Ex C at 1.) No explanation was provided for these discrepancies.

[5] On March 20, 2017, Plaintiff filed an Application for Construction-in-Process (CIP) EZ Exemption. (Decl of Mangan, Ex B at 1.) It estimates a cost of $2,150,000 for the "building, structure, or addition" and estimates a completion date of October 2017. (*Id.*)

On April 1, 2019, Plaintiff filed an EZ Exemption Claim that references the authorization submitted April 20, 2016, and approved March 27, 2017.[6] (Decl of Mangan, Ex E at 2; Def's Reply at 3.) It identifies the account number as 15725 and the total cost of investment property as $4,809,982. (Decl of Mangan, Ex E at 2.) Defendant identified the account number as 21440 and checked a box indicating the claim was approved. (*Id.*) The property schedule attached to Plaintiff's 2019 EZ claim form lists the following investment costs claimed for exemption:

| | |
|---|---|
| Real property, new additions or modifications to buildings or structures | $450,000[7] |
| Real property, newly installed machinery and equipment | $342,430 |
| Certain personal property in excess of $1,000[8] | $17,552 |
| Total of owned qualified property | $359,982[9] |
| Total of leased qualified property | $4,000,000 |
| Total cost of investment | $4,809,982[10] |

(Supp Decl of Beebe, Ex B at 2.) In the same section, "tasting room" and "kitchen" appear to have been listed and then scribbled out. (*Id.*) The $4 million for leased real property lists the Portway Ave address without any further specificity. (*Id.* at 4.) Plaintiff maintains that $4 million is the approximate cost to construct its entire leased space on both floors.

A letter from Defendant to Plaintiff, dated November 1, 2019, stated that its claim had been approved for the 2019-20 tax year but did not specify in what amount or otherwise indicate

---

[6] Also in 2019, Plaintiff filed a CIP EZ Exemption Application for Account 21439 for a "commercial kombucha brewery production and packaging, distillery production and packaging plant and storage" with a cost of $300,000. (Decl of Mangan, Ex G.) Defendant approved Plaintiff's application on November 1, 2019. (*Id.,* Ex H at 1.)

[7] This is described as a brewery. (Supp Decl of Beebe, Ex B at 2.)

[8] Specifically, personal property used exclusively for tangible production or in E-commerce in an approved designation.

[9] This amount does not appear to reflect the $450,000 listed for new additions to or modifications of existing buildings or structures. The omission of that amount was not explained.

[10] This amount appears to include the $450,000 listed for new additions to or modifications of existing buildings or structures.

that it was a partial approval. (Decl of Mangan, Ex E at 1.) Plaintiff asserts that Defendant, in fact, denied Plaintiff's 2019-20 exemption claim in part based on Defendant's conclusion that the second floor of the building was significantly engaged in retail food services. (Ptf's Resp at 2.) Plaintiff asserts that it "did not state anywhere in the Application that it was not seeking an exemption for the entire [p]remises." (Ptf's Sur-Reply at 3.) Defendant disagrees, maintaining that Plaintiff's 2016 authorization application specifically excluded the retail activities on the second floor, so Defendant did not exempt that space. (Decl of Beebe at 1.) Plaintiff did not file new property schedules or claim new property for exemptions for the 2020-21 or 2021-22 tax year. (Decl of Beebe at 2.)

2. *Plaintiff's Complaint, Accounts involved, Property Tax Statements*

Plaintiff filed its Complaint on January 7, 2022, appealing the assessment of properties identified as Accounts 21439 and 21440 for the 2019-20 through 2021-22 tax years, contending that they are exempt under the EZ exemption statutes, specifically ORS 285C.140(9). (Compl at 1-2.) Plaintiff did not attach notices or property tax statements for those properties.[11] Plaintiff maintains that it did not receive notice of Defendant's partial exemption denial and first learned of the denial during a hearing held October 21, 2021, in a related case. (Decl of Mangan at 1-2, ¶2.)

Defendant provided property tax statements listing the following values for Account 21439 for the tax years at issue:

| Account | 2019-20 RMV | 2019-20 AV | 2020-21 RMV | 2020-21 AV | 2021-22 RMV | 2021-22 AV |
|---------|-------------|------------|-------------|------------|-------------|------------|
| 21439 | $300,000 | $0 | $514,420 | $37,200 | $545,290 | $38,310 |

---

[11] In response to a court request for property tax statements or other documents appealed, Plaintiff provided records including a "Real Property Assessment Report for Assessment Year 2019" for Account 21440 that describes the account as "nonassessable" and lists its total value as $3,008,560. (Ptf's Ltr, Jan 25, 2022, Ex 5 at 7.) It includes a notation stating "EZ Potential Additional Tax Added 2019" in the amount of $2,190,540. (*Id.*)

(Decl of Ruffin, Exs B at 4, C at 4.)  Account 21439 includes Plaintiff's tenant improvements appraised by the Department of Revenue.  (Decl of Mangan, Ex A at 7.)

Account 21440 is a "placeholder account" for the value of exempt property.  (Decl of Mangan, Ex A at 7.)  An undated document prepared by Defendant for a related case lists the exempt value as $3,008,560.  (*Id.*[12])  That value presumably pertains to the 2019-20 tax year, which is the tax year appealed in the related case, though the tax year is not listed in the document.  (*Id.*)  That value is the total of the exempt values of five other accounts: 21439 (described above); 21121 (Plaintiff's machinery and equipment appraised by the Department); 621086 (Plaintiff's personal property appraised by the Department); 15725 (the building); and 21213 (the parking lot).  (*Id.*)  The building exempt value is $2,140,340.  (*Id.*)  "Exempt area calculations" for accounts 15725 (building) and 21213 (parking lot) describe the "exempt area" as the first-floor production area and list the total exempt value as $2,169,780.[13]  (*Id.*)  That total includes the first floor and site improvements.  (*Id.*)

B.    *Parties' Arguments*

Defendant moves to dismiss Plaintiff's Complaint because Plaintiff is not aggrieved under ORS 305.275(1) by any decision made by Defendant.  (Def's Mot at 1.)  In the alternative, Defendant moves to dismiss Plaintiff's Complaint as untimely under ORS 305.280(1) because Plaintiff did not appeal the EZ authorization approval within 90 days.  (*Id.* at 2.)

1.    *Aggrievement*

Defendant maintains that it granted Plaintiff's requested exemption in full, so Plaintiff is not aggrieved by any action by Defendant.  (Def's Mot at 2, 4.)  Defendant focuses primarily on

---

[12] The related case is *Key Development v. Hood River County Assessor*, TC-MD 200110R.  (Decl of Mangan at 2.)

[13] Beebe confirmed at oral argument that was the exempt amount approved by Defendant.

Plaintiff's EZ authorization, writing that it was for Plaintiff's "eligible activities, manufacturing and processing, but not its ineligible activities, retail sales." (*Id.* at 2.) Plaintiff specifically indicated it would engage in the ineligible activity of "retail sales * * * on a separate floor from manufacturing and processing." (*Id.* at 3 (quoting 2016 EZ Authorization Application.) In Defendant's view, Plaintiff's statement was an admission that its retail sales activity did not qualify for exemption. (*Id.* at 5.) Defendant connects the 2016 authorization to the 2019 claim form because claimed property must be of the same general type described in the authorization application. (Def's Reply at 2-3.)

Plaintiff maintains that, for each tax year, it sought exemption for the entire property "without distinguishing between the first and second floors." (Ptf's Resp at 2.) It disputes that Defendant granted the exemption in full and maintains that it admitted as much in the related case. (*Id.*) In Plaintiff's view, Defendant denied the exemption in part based on its review and determination that Plaintiff's retail food service activity was "significant." (*Id.* at 3.)

2.      *Timeliness*

Defendant maintains that Plaintiff's deadline to appeal the EZ authorization approval was June 25, 2017, which is 90 days after the approval was given on March 27, 2017. (Def's Mot at 5, Reply at 4.[14]) Defendant also asserts that Plaintiff missed the deadline to appeal the November 1, 2019, claim approval because it failed to file by January 30, 2020. (Def's Reply at 4.) Plaintiff responds that it should be allowed to appeal any exemption denials that occurred on or after March 8, 2019. (Ptf's Resp at 3.) Plaintiff agrees that ORS 305.280(1) allows an appeal within 90 days of actual knowledge of Defendant's act, omission, order, or determination, but in no event more than one year. (*Id.*) However, Chief Justice Order (CJO) 20-027 extended

---

[14] Defendant's Motion references the year 2018, which appears to be a typo. The Reply references 2017.

statutory time periods, including those in ORS 305.280, during the pendency of the Oregon Governor's state of emergency, which was declared on March 8, 2020. (*Id.*) Thus, any deadline under ORS 305.280(1) that fell on or after March 8, 2020, was extended.

C.     *Overview of EZ Statutes Involved*

To be eligible for EZ exemption, a firm must engage "in the business of providing goods, products or services to businesses or other organizations through activities including, but not limited to, manufacturing, assembly, fabrication, processing, shipping or storage." ORS 285C.135(1).[15] A firm is not eligible if it is engaged "in the business of providing goods, products or services to the general public for personal or household use" or if it is "[s]ignificantly engaged in a business activity * * * that consists of retail sales or services * * *." ORS 285C.135(2).[16] Before starting construction or hiring employees, the firm must apply for authorization using a form prescribed by the Department of Revenue. ORS 285C.140(1). Among other things, the application must include a description of the firm's current and proposed business operations in the zone, and a description and estimated value of qualified property to be constructed. ORS 285C.140(2). As Defendant notes, the authorization form requires the firm to list its eligible activities within the zone, as well as any ineligible activities. (Def's Mot at 3.) Authorization "does not ensure that property constructed, added, modified or installed by the authorized business firm will receive property tax exemption under ORS 285C.175." ORS 285C.140(10).

This court has cautioned against too rigid an interpretation of the authorization. *See United Streetcar LLC v. Dept. of Rev.*, TC 5318, WL 3034444 at *9-10 (Or Tax, 2019). "The

---

[15] The court's references to the Oregon Revised Statutes (ORS) are to 2021. There were no changes to the EZ exemption statutes referenced here during any of the tax years at issue.

[16] The section lists additional ineligible activities that are not relevant here.

statutory origin of the form's list of activities is the requirement in ORS 285C.135 that an eligible firm 'provid[e] goods, products or services to businesses or other organizations through activities including, but not limited to, manufacturing, assembly, fabrication, processing, shipping or storage.'" *Id.* at *9. The same is true of the list of "ineligible activities." *Id.* at *9, n19. Furthermore, authorization occurs early in the process of a firm seeking exemption, before it has started construction or hired employees. *Id.* at *10. It requires only "estimates" of property values and employee numbers. *Id.*

Once the firm has completed construction,[17] it may file its first claim for EZ exemption with the assessor by April 1 after the assessment year in which the property was placed in service. *See* ORS 285C.220(1)(a), (9)(a); *see also United Streetcar*, 2019 WL 3034444 at *2. "For the first tax year for which qualified property is exempt under ORS 285C.175, the claim filed under ORS 285C.220 must include a property schedule listing the qualified property." ORS 285C.225(2). Among other things, the property schedule must list all qualified property for which exemption is claimed, as well as its cost. ORS 285C.225(4). To be "qualified property" eligible for exemption, the property must satisfy "applicable usage, lease or location requirements established under ORS 285C.185." ORS 285C.050(16); ORS 285C.180(2)(b).

> " '[Q]ualified property' generally must (1) be newly constructed or installed; (2) meet a minimum cost requirement; (3) be constructed or installed for approved income-producing purposes of the firm; (4) be owned or leased by an authorized firm; and (5) be of the same 'general type,' and in the same location inside the geographic boundaries of the enterprise zone, as described in the firm's application for authorization."

*United Streetcar*, 2019 WL 3034444 at *1 (citing ORS 285C.180).

/ / /

---

[17] While the property is under construction, the firm may seek CIP exemptions. *See* ORS 285C.170.

The business firm must "be prepared to verify any information set forth in" its EZ claim form. ORS 285C.220(3). The assessor may "[r]easonably rely on information set forth in the exemption claim filed under ORS 285C.220" and may also seek additional information to determine if property qualifies for exemption. ORS 285C.230(1); ORS 285C.235. If the assessor concludes the claimed property qualifies for exemption, the assessor must grant exemption for the tax year beginning July 1. ORS 285C.220(4).

D.    *Analysis*

The issue presented is whether Plaintiff's Complaint must be dismissed, either because Plaintiff is not aggrieved or because Plaintiff's appeal is untimely. On review of the Motion, the court accepts at true facts alleged by Plaintiff. *See Bay Area Hospital v. Oregon Health Authority*, TC 5333, WL 1934469 at *4, n 7 (2019).

1.    *Whether Plaintiff is Aggrieved*

A person appealing to this court must be "aggrieved by and affected by an act, omission, order or determination of * * * [a] county assessor or other county official, including but not limited to the denial of a claim for exemption * * *." ORS 305.275(1)(a)(C). To be "aggrieved by and affected by" an act, omission, order, or determination a taxpayer must have "suffered an injury or wrong that creates a private interest in the outcome of the matter that is different from that of a member of the general public." *Seneca Sustainable Energy, LLC v. Dept. of Rev.*, 363 Or 782, 796, 429 P3d 360 (2018). The taxpayer must also have "an immediate claim of wrong" as opposed to a potential future or speculative claim. *See River Vale Limited Partnership v. Dept. of Rev.*, TC 5390, WL 926583 at *8 (Or Tax, 2021).

In addition, "[t]he act omission, order or determination must affect the property of the person making the appeal or property for which the person making the appeal holds an interest

that obligates the person to pay taxes imposed on the property." ORS 305.275(1)(b). Such interest "includes a contract, lease, or other intervening instrumentality." *Id.*; *see also Ochsner v. Dept. of Rev.*, 21 OTR 158, 159 (2013) (lessee could appeal exemption denial only if its lease imposed an obligation to pay the property tax).

Plaintiff offered no evidence of a bill or an accounting from Key Development for any of the tax years at issue, raising a question of whether Plaintiff's claim is speculative.[18] Plaintiff presented a lease with Key Development that imposes on Plaintiff an obligation to pay its share of real property taxes. In addition, Plaintiff alleges that Key Development notified Plaintiff that it owed taxes. Thus, the court is satisfied at this stage that Plaintiff has demonstrated an obligation to pay property taxes within the meaning of ORS 305.275(1)(b).

The next question is whether Plaintiff is aggrieved by an act of Defendant. Specifically, whether Defendant denied in part Plaintiff's exemption claim for any of the tax years at issue. The multi-step process by which a firm seeks an EZ exemption has complicated this question with Defendant focusing on Plaintiff's original authorization application that references Plaintiff's ineligible retail sales activities. As discussed above, the authorization application is a necessary first step in the process of receiving an exemption and describes the firm's proposed activities within the zone as well as an estimated value of its property. Those details become more concrete when the firm files its first claim for exemption, which Plaintiff did in 2019. Defendant correctly notes that the property claimed for exemption must be of the same general type listed in the authorization.[19] However, the determination of whether property ultimately

---

[18] The lease contains time periods by which Key Development must provide an accounting for CAMs, so it unclear whether Key Development can or will collect real property taxes from Plaintiff after those time periods.

[19] Plaintiff dedicates a significant portion of its reply brief to the topic of interpreting the original 2016 authorization application. (*See* Ptf's Sur-Reply at 1-7.) That topic is beyond the scope of this Order.

qualifies for exemption turns on more than the authorization. ORS 285C.140(10) cautions that authorization does not guarantee property will ultimately receive exemption. *See also* ORS 285C.230(1); ORS 285C.235 (allowing Defendant to look to the exemption claim filed under ORS 285C.220 or to seek additional information from the zone sponsor or the owners or lessees of the qualified property when determining whether the exemption claim should be granted).

In determining whether Plaintiff's 2019-20 exemption claim was granted in full or part, the court compares the property costs listed on the exemption claim form and schedule with the exemption ultimately granted. Plaintiff's claim and property schedule listed the Portway Ave building and a value of $4 million without much else. Defendant ultimately exempted $2,169,780 for the building. That difference could be due to differing opinions of value or, as Plaintiff alleges, it could be based on Plaintiff's claim to exempt its entire leased space. Once again, the court accepts as true facts alleged by Plaintiff and so accepts that the $4 million Plaintiff claimed represented its entire leased space. Defendant appears to have denied Plaintiff's 2019-20 EZ claim in part. The court concludes that Plaintiff is aggrieved under ORS 305.275(1)(a).

2. *Whether Plaintiff's Complaint is Timely*

As Plaintiff correctly stated in its briefing, ORS 305.280(1) allows a taxpayer to appeal within 90 days of actual knowledge of Defendant's act, omission, order, or determination, but in no event more than one year after the act, omission, order, or determination. Plaintiff alleges that it did not receive actual knowledge of Defendant's partial exemption denial until October 2021 during a hearing in the related case. Ordinarily, a property tax statement serves as notice that an exemption was denied in full or part. Here, the 2019-20 property tax statement for the building account was sent to Key Development, which appealed the 2019-20 value in the related case.

There is no evidence that Plaintiff knew of the exemption denial prior to October 2021, so the court accepts Plaintiff's allegation as true.

The next question is when Defendant's act – denying the exemption in part – occurred. Plaintiff filed its 2019-20 claim on April 1, 2019, and Defendant approved it on November 1, 2019. Without more, the court tentatively concludes that Defendant's act occurred November 1, 2019. Even if Defendant's act occurred before November 1, 2019, it could not have occurred before April 1, 2019, when Plaintiff filed its claim. At the very earliest, Plaintiff's one-year deadline to appeal Defendant's partial exemption denial fell on April 1, 2020. ORS 305.280(1).

Plaintiff correctly notes that CJO 20-027 extended statutory time periods, including those in ORS 305.280, during the pendency of the Oregon Governor's state of emergency, which was declared on March 8, 2020. CJO 20-027 specifically applies to "[a]ny appeal to the Magistrate Division subject to the time periods or time requirements imposed by ORS 305.280." Thus, the court agrees with Plaintiff that its deadline to appeal Defendant's 2019-20 partial exemption denial fell within the period of extension described in CJO 20-027. The same reasoning extends to Plaintiff's appeal of the 2020-21 and 2021-22 tax years.[20] Plaintiff's Complaint is timely.

E. *Conclusion*

Upon careful consideration, the court concludes that Plaintiff is aggrieved by and affected by Defendant's partial denial of its EZ exemption claim for the 2019-20 through 2021-22 tax years. The court further concludes that Plaintiff's Complaint is timely. Defendant's Motion to Dismiss must be denied. Now, therefore,

---

[20] To the extent Plaintiff seeks to appeal any act, omission, order, or determination related to its 2016 authorization, Defendant is correct that time has passed. However, Plaintiff's Complaint lists only the 2019-20, 2020-21, and 2021-22 tax years, so the court does not read it as challenging Defendant's EZ authorization approval in March 2017.

IT IS ORDERED that Defendant's Motion to Dismiss is denied. Defendant will file an answer within the time allowed under Tax Court Rule – Magistrate Division 2 B.

IT IS FURTHER ORDERED that, within 60 days from the date of this Order, the parties will file a joint written status report proposing next steps.

Dated this _____ day of September 2022.


_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

*This interim order may not be appealed. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved. ORS 305.501.*

*This document was signed by Magistrate Allison R. Boomer and entered on September 15, 2022.*